**TEXAS PARKS AND WILDLIFE DEPARTMENT, Appellant,**

v.

**W.M. CALLAWAY, Jr., Appellee.**

**No. 03-97-00655-CV.**

*Court of Appeals of Texas, Austin.*

June 11, 1998.

Dan Morales, Atty. Gen., David J. Preister,
Priscilla M. Hubenak, Asst. Attys. Gen., Nat-

ural Resources Division, Austin, for Appellant.

Jeffrey Thomas Knebel, Small, Craig & Werkenthin, P.C., Austin, for Appellee.

Before POWERS, ABOUSSIE and JONES, JJ.

JONES, Justice.

This case presents the issue of whether a governmental agency is protected by sovereign immunity when it takes actions that violate both contractual and extracontractual duties. W.M. Callaway, Jr. owns property on which the Texas Parks and Wildlife Department (the "Department") has an easement for a waterway known as the Keith Lake Water Exchange Pass (the "Pass"). Callaway sued the Department on multiple theories for claims arising out of the Department's decision to open the Pass to public boat traffic. The Department filed a plea to the jurisdiction, asserting that each of Callaway's claims arose from an alleged breach of the agreement by which the Department obtained the easement and that the Department's immunity from suit deprived the trial court of jurisdiction. After initially sustaining the Department's plea and dismissing the suit, the trial court subsequently granted Callaway's motion for a new trial and, on reconsideration, denied the Department's plea to the jurisdiction. The Department appeals. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West Supp.1998). We will affirm in part and reverse and render in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Our description of the background of this controversy is drawn primarily from Callaway's petition.[1] The Pass is a canal-like waterway approximately 300 feet wide and 3,000 feet long connecting the Sabine–Neches Ship Channel on the east to Keith Lake on the west. The primary purpose of its construction was to foster the propagation of fish and other aquatic life in Keith Lake. In order to construct and maintain the Pass, in July 1976 the Department obtained an easement and right-of-way across land owned at that time by Dalco Oil Company. The easement contains a number of "reservations and conditions," including the following:

5. It is agreed and understood [the Department] will construct, reconstruct, and maintain during the term of this easement a permanent barrier to all water traffic across the gap between the aforementioned weir and the upland to the north.

. . . .

14. It is agreed and understood the "Keith Lake Water Exchange Pass" will be closed to all water traffic except that of the employees or agents of the parties hereto. [The Department] shall post notices of such restriction to the public by signs erected at the Keith Lake entrance to such pass and shall maintain all such signs during the term of this easement.

Construction of the Pass was completed in 1977. Afterwards, the Department complied with the restrictions on public access contained in the easement agreement.

In 1988 Callaway purchased a 12.6-acre tract of land near the location where the Pass intersects the Sabine–Neches Ship Channel. Callaway's tract lies along and beneath the waters of the Pass. In 1994 a significant amount of public attention and inquiry was directed toward the Department concerning the basis for the boating ban in the Pass. In mid-1995 the Department decided to open the Pass to the public. In addition to informing its game wardens to cease enforcing the boating ban, the Department replaced the signs prohibiting boat traffic in the Pass with caution signs, removed the physical barrier to public boat traffic, and announced to the media that the Pass was open to the public. As part of the rationale for its actions, the Department stated that it had determined it had no legal authority to restrict

---

1. In ruling on a plea to the jurisdiction, the trial court must base its decision solely on the well-pleaded allegations in the plaintiff's pleadings. *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949); *Firemen's Ins.* *Co. v. Board of Regents*, 909 S.W.2d 540, 541 (Tex.App.—Austin 1995, writ denied). In the absence of a challenge to their accuracy, these factual allegations must be taken as true. *Id.*

public boating in the Pass because the waters therein constituted "public waters."

In response to the Department's decision to open the Pass, Callaway brought this suit. Callaway claimed that the Department's actions changed the character of the Pass from private to public, effectively taking his property or damaging it without compensation. The Department responded by characterizing Callaway's "takings" claim and other causes of action as merely a suit for breach of the easement agreement. The Department argued that Callaway's "breach of contract" claims were barred by sovereign immunity. Alternatively, the Department argued that it lacked the requisite intent to "take" Callaway's property. The trial court denied the Department's motion to dismiss Callaway's suit on any of the pleaded theories.

Callaway's suit asserted several causes of action relating to the Department's decision to open the Pass to the public: (1) inverse condemnation; (2) violation of due process based on the Department's alleged failure to provide Callaway notice, hearing, and an opportunity to comment on its decision; (3) declaratory judgment that the Department has statutory authority to restrict public boating in the Pass; (4) attorney's fees in conjunction with his request for declaratory relief; (5) trespass to try title; (6) damages for the Department's breach of the easement; and (7) an injunction to prevent future violations of the easement's restrictions on public boating in the Pass. The last two causes of action were pleaded as an alternative to his claims for inverse condemnation and violation of due process. On appeal, the Department complains in a single issue that the trial court erred in failing to sustain its plea to the jurisdiction as to each of Callaway's claims.

## DISCUSSION

### I. Inverse Condemnation

Article I, section 17 of the Texas Constitution provides, in pertinent part, that "No person's property shall be taken, damaged or destroyed for or applied to public use *without adequate compensation being made ....*" Tex. Const. art. I, § 17 (emphasis

added). Thus, although the state and its agencies may take, damage, or destroy property for public use, this power is inextricably tied to an obligation to provide adequate compensation to those who involuntarily yield vested property rights to the larger community. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 737 (1941). This constitutional provision "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Steele v. City of Houston,* 603 S.W.2d 786, 789 (Tex. 1980) (citations omitted). An actual taking or physical appropriation is not required. *Felts v. Harris County,* 915 S.W.2d 482, 484 (Tex.1996).

■ In the usual situation, the state or its agency compensates the property owner before taking his property, either by paying a mutually agreed price or paying the value as determined in a formal condemnation proceeding. *Westgate, Ltd. v. State,* 843 S.W.2d 448, 452 (Tex.1992). An "inverse condemnation" proceeding is the avenue of relief available when property has been taken or damaged for public use without compensation or a proper condemnation proceeding, and the property owner wishes to recover compensation for his loss. *Id.* The proceeding is "inverse" in that the property owner, rather than the state or its agency, brings the lawsuit. An inverse condemnation may occur when the state or its agency physically takes or invades property, or when it unreasonably interferes with the property owner's right to use and enjoy his property. *Id.; see, e.g., City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tex.1978) (city liable in damages to landowner where city sought to impose servitude on land to preserve its natural character).

#### (a) Sovereign Immunity

The Department, like any state agency, is a creature of the legislature and possesses only such powers as are delegated to it expressly and impliedly by the legislature. *State v. Jackson,* 376 S.W.2d 341, 344 (Tex. 1964); *Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.,* 826 S.W.2d 715, 719 (Tex.App.—Austin 1992, writ denied).

The Department is generally responsible for administering the laws relating to game, fish, oysters, and marine life. Tex. Parks & Wild. Code Ann. §§ 1.011, 12.001, 12.0011 (West 1991). Pursuant to its responsibility for wildlife management, the Department may purchase land "for the construction and maintenance of passes leading from one body of tidewater to another." Tex. Parks & Wild. Code Ann. § 81.102 (West 1991). Alternatively, the Department may condemn the property of any person or corporation in the state. *Id.* § 81.103. In the present case, the Department acquired, for the nominal sum of $1, an easement and right-of-way for the construction and maintenance of the Pass.

The writing granting the easement contains a number of reservations and conditions, including several provisions that restrict public access to the Pass. Neither Callaway nor the Department argues that the written easement document is ambiguous. Rather, Callaway alleges that the Department's decision to open the Pass to the public and its affirmative action to accomplish that result not only exceeded any rights granted to the Department in the easement agreement, but also resulted in a taking or damaging of his property without compensation.[2] In particular, Callaway alleges that the Department affirmatively acted outside the scope of the easement by replacing the "No Trespassing" signs with caution signs, removing the physical barrier to public boat traffic, and announcing to the media that the Pass had been opened to the public. The Department seeks to escape liability for taking or damaging Callaway's property by its contention that Callaway's real complaint is that opening the Pass to

the public was an alleged "breach of contract."[3]

■ Sovereign immunity consists of two basic legal principles. First, unless waived, the state has immunity from liability. *Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Second, the state as sovereign is immune from suit without consent. *Id.; see also* Tex. Civ. Prac. & Rem.Code Ann. § 107.002 (West 1997) (providing for grants of permission to sue the state). Entering into a contract waives the state's immunity from liability, but not its immunity from suit. *Federal Sign*, 951 S.W.2d at 405–06. In the present case, the Department, as a state agency, is protected by sovereign immunity when it enters into contracts. *See Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). However, an action for inverse condemnation is a limited exception to the doctrine of sovereign immunity. *Steele*, 603 S.W.2d at 791. When the state or its agency takes, damages, or destroys property for public use, "[t]he Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity...." *Id.* Thus, if Callaway alleged a valid claim for inverse condemnation relating to the Department's decision to open the Pass to the public, sovereign immunity does not bar the claim.

The Department argues that Callaway's claims are grounded solely on the easement agreement and, therefore, are barred by sovereign immunity. We disagree. Clearly, one purpose of Callaway's suit is to establish the validity of the rights and obligations granted in the easement. However, the ba-

2. In its brief, the Department contends that this Court's decision in *Firemen's Ins. Co. v. Board of Regents*, 909 S.W.2d 540 (Tex.App.—Austin 1995, writ denied), is dispositive of the issues on appeal. The Department asserts that Callaway's essential complaint is that the Department "wrongfully" opened the Pass to public navigation. In *Firemen's*, we held that the plaintiff's allegation of a tort specifically negated the takings claim. More specifically, we found that the plaintiff's allegations of fraudulent inducement of a contract involved claims outside the state's scope of authority, thereby causing the allegation to be a tort and not a takings claim. In the present case, however, a careful reading of Callaway's petition reveals that the essence of his

complaint is not a tort such as fraudulent inducement, but that the Department took or damaged his property without proper condemnation proceedings or just compensation.

3. The rules regarding construction of deeds generally apply in the construction of easements. *Lo-Vaca Gathering Co. v. Missouri–Kansas–Texas R.R.*, 476 S.W.2d 732, 741 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.). A "condition" in a deed is often treated as a covenant, the remedy for a breach of which is an action for damages. *See Hearne v. Bradshaw*, 158 Tex. 453, 312 S.W.2d 948, 951 (1958).

sis of Callaway's claim for inverse condemnation does not rest on contractual grounds alone; we must consider the alleged taking or damaging of Callaway's property. *See Courtney v. University of Tex. Sys.*, 806 S.W.2d 277, 283 (Tex.App.—Fort Worth 1991, writ denied) (distinguishing breach of contract from divestment of property right). The existence of a contract is not talismanic, but merely leaves the state's immunity from suit intact; it does not build an impenetrable wall nullifying the possibility of other waivers of and exceptions to that immunity. *See Federal Sign*, 951 S.W.2d at 408 n. 1 (noting that state may not always be immune when it contracts).

### (b) Callaway's "Takings" Claim

■ To recover under a theory that property has been "taken" within the meaning of article I, section 17, the complainant must establish that the state or its agency intentionally performed certain acts that resulted in a taking of property for public use. *Green Int'l, Inc., v. State*, 877 S.W.2d 428, 434 (Tex. App.—Austin 1994, writ dism'd by agr.). In the present case, the Department argues that there was no intent to take Callaway's property. The Department asserts a good-faith belief that it lacks statutory authority to enforce the boating ban and, therefore, argues that its decision to withhold enforcement of its contractual duties was made without the requisite intent. In support of its argument, the Department relies on this Court's opinion in *Green International.* The Department argues that, as in *Green International*, its decision to withhold performance was made under a "color of right" within the scope of the easement. *Green Int'l*, 877 S.W.2d at 434. However, *Green International* is distinguishable from the present case. In *Green International* and every other case we have found in which sovereign immunity prevented a private party from recovering damages from the state for an alleged breach of contract, the state's duty to pay or perform arose *solely* from its contract with the private party. *See, e.g., Federal Sign*, 951 S.W.2d at 403 (suit for damages and lost profits based on university's alleged breach of contract); *Firemen's Ins. Co. v. Board of Regents*, 909 S.W.2d 540,

541 (Tex,App.—Austin 1995, writ denied) (suit against state university for monies allegedly due pursuant to construction contract); *Green Int'l*, 877 S.W.2d at 431 (suit against state for monies allegedly due pursuant to construction contract); *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813–14 (Tex.1970) (suit for indemnity based on a written track agreement); *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 839–41 (1958) (suit for declaration of rights relating to a state permit); *Herring v. Houston Nat'l Exch. Bank*, 114 Tex. 394, 269 S.W. 1031, 1033 (1925) (suit to recover money the state allegedly had not paid for the purchase of land).

Here, in contrast, we are not examining sovereign immunity and inverse condemnation solely in the context of the breach of contractual duties. For example, the Department has not merely refused to perform its contractual obligations by allowing the physical barrier to fall into disrepair or by refusing to post "No Trespassing" signs. Rather, the Department has acted affirmatively to open the Pass to public boating. The state's duty to build a structure may come initially from a contract, but once it is built, the constitution itself imposes on the state a duty not to tear it down without paying adequate compensation. Thus, the Department, apart from its contractual obligations, has a duty not to affirmatively take, damage, or destroy property within the meaning of article I, section 17 of the Texas Constitution without making adequate compensation. Accordingly, the question raised by Callaway's claim for inverse condemnation is whether the Department, totally aside from withholding performance of its contractual obligations, has taken or damaged Callaway's property by its affirmative actions.

The Department defends its actions by asserting that the Texas Constitution requires that the Pass be kept open to the public because the waters of the Pass are "public waters." *See* Tex. Const. art. XVI, § 59(a). The Department argues that because it is required by law to take the actions it did, it has no constitutional duty to compensate Callaway for his loss. We disagree. Disregarding the easement agreement and

its restrictions on public boating that the Department has refused to enforce, we are left with Callaway's claim that the Department intentionally and affirmatively performed certain acts that resulted in a taking or damaging of his property for public use. The Department cannot escape the fact that such affirmative acts constitute a taking or damaging for public use merely because the acts that resulted in the taking or damaging were somehow mandated by state law. Many, if not most, such acts could be traced to a legal requirement. To adopt the position urged by the Department would emasculate article I, section 17 of the Texas Constitution. We conclude that Callaway's petition establishes a lawful cause of action under article I, section 17. Accordingly, the trial court did not err in denying the Department's plea to the jurisdiction as to Callaway's inverse condemnation claim.

## II. Procedural Due Process

■ Article I, section 19 of the Texas Constitution provides, in pertinent part, that no citizen may be deprived of property "except by the due course of the law of the land." While this clause of the Texas Constitution is textually different from its federal counterpart in that it refers to "due course" rather than "due process," these terms are without meaningful distinction. *University of Tex. Medical Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995). A complainant alleging a procedural due-process claim must establish that he was deprived of notice and an opportunity to be heard with respect to a decision affecting his property. *Federal Sign,* 951 S.W.2d at 410 (explaining that due course of law exists to prevent the government from depriving persons of property without notice and a hearing); *cf. Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■ In the present case, Callaway alleges that, in addition to taking his property for public use without compensation, the Department took his property without providing him due process. Specifically, Callaway alleges that the Department held no hearing, gave no notice of its decision before or after making it, and provided no opportunity for

Callaway to comment on the proposed decision. The Department again responds that Callaway's due-process claim emanates from an alleged breach of contract and is barred by sovereign immunity. *See Federal Sign,* 951 S.W.2d at 409. Having concluded above that Callaway properly pleaded a constitutional taking claim, we likewise reject the Department's response to Callaway's due-process claim. Callaway has a property interest that is entitled to due-process protection. The Department's duty to afford an appropriate and meaningful opportunity to be heard does not arise from the easement agreement, but from article I, section 19 of the Texas Constitution. The trial court therefore did not err in denying the Department's plea to the jurisdiction as to Callaway's due-process claim.

## III. Request for Declaratory Judgment

■ Callaway requests a declaratory judgment that the Department has authority to keep the Pass closed to the public. Tex. Civ. Prac. & Rem.Code Ann. § 37.004 (West 1997). Further, he seeks a judgment declaring that the Department must use this authority in complying with the easement's conditions and restrict public boating in the Pass. Callaway asserts that the Department acted wrongfully and without legal authority in opening the Pass, and, therefore, his request for declaratory judgment is not barred by sovereign immunity. *See Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 714–15 (1945). The Department argues in response that because Callaway also seeks damages based on its decision to open the Pass, his combined claim for a declaratory judgment should be dismissed for lack of jurisdiction on the basis of sovereign immunity. *See Federal Sign,* 951 S.W.2d at 404–05 (claims for state law violation did not dispense with need to secure legislative consent to sue state agency for damages).

In *Cobb,* the complainants brought suit to obtain a judgment declaring that they were not "motor carriers" as defined by the tax statute and that state officials, endeavoring to compel respondents to pay the tax, were acting wrongfully and without legal authority. *Cobb,* 190 S.W.2d at 712. The court

held that this was not a suit against the state and thus was not barred by sovereign immunity. *Id.* The court emphasized that the complainants were not seeking to impose liability on the state or to compel performance of a contract. *Id.* In the present case, however, Callaway's primary complaint is that the Department has taken his property without compensation or due course of law. Since Callaway primarily seeks money damages, his request for declaratory judgment does not fit under the exception to sovereign immunity established in *Cobb.*

Although Callaway's request for declaratory judgment is not premised expressly on breach of contract, it is analogous to such a claim. In essence, Callaway seeks a declaration of his rights under the easement and an order enforcing those rights. *See Herring v. Houston Nat'l Exch. Bank,* 113 Tex. 264, 253 S.W. 813, 814 (1923) (suit against state officers to require them to. perform contract by state or to establish validity of contract by state is suit against state itself); *Haden,* 308 S.W.2d at 840 (applying *Herring* in case brought to enforce rights arising out of contract with state agency). There is no basis for the injunctive relief or the contractual damages that Callaway seeks unless he can establish that the easement constituted a contract, binding on the Department, which he can enforce. *See Haden,* 308 S.W.2d at 841. Whether the Department's decision that it was legally required to open the Pass was correct or incorrect, a suit to test it by seeking enforcement of contract rights is necessarily a suit against the state that cannot be maintained without legislative permission. *See id.* at 842. The trial court therefore erred in denying the Department's plea to the jurisdiction as to Callaway's request for a declaratory judgment.

## IV. Request for Attorney's Fees

In conjunction with his request for declaratory relief, Callaway also requests an award of attorney's fees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 1997). Having concluded that the trial court erred in denying the Department's plea to the jurisdiction as to Callaway's request for a declaratory judgment, we also conclude that the trial

court erred in denying the Department's plea to the jurisdiction as to Callaway's request for attorney's fees.

## V. Trespass to Try Title

■ Callaway asserts a trespass to try title claim against the Department based on the Department's failure to enforce the restrictions on public access to the Pass contained within the easement. Callaway alleges that as a result of the failure of the Department to enforce the restrictions, the easement should be declared void and forfeited. A suit for title to land against the state or its agency cannot be maintained without legislative consent. *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579, 582 (1961); *Bell v. State Dep't of Hwys. & Pub. Transp.,* 945 S.W.2d 292, 294 (Tex.App.—Houston [1st Dist.] 1997, writ denied).

When the sovereign has neither title nor right to possession, individual state officials and agency employees can be sued in their individual capacities without legislative consent. *Lain,* 349 S.W.2d at 581–82. The property owner is not required to obtain legislative consent to sue simply because a state official or agency employee asserts a good faith but overzealous belief that title or right of possession is in the state and that he is acting for and on behalf of the state. *Id.* Because Callaway has not sued any officials in their individual capacities, however, the trial court erred in denying the Department's plea to the jurisdiction as to Callaway's trespass to try title claim.

## VI. Breach of the Easement Agreement

■ As an alternative to his claim for inverse condemnation, Callaway seeks money damages based on the Department's alleged breach of the easement agreement; he also requests a permanent injunction requiring the Department to comply with the conditions of the easement. The state is immune from a suit for money damages based on an alleged breach of contract unless the state has expressly given its consent to be sued. *Federal Sign,* 951 S.W.2d at 405; *Firemen's Ins.,* 909 S.W.2d at 542; *Green Int'l,* 877 S.W.2d at 432. In addition, a suit seeking injunctive relief to enforce contractual rights

is necessarily a suit against the state that cannot be maintained without legislative permission. *Federal Sign,* 951 S.W.2d at 408; *Haden,* 308 S.W.2d at 842. The trial court therefore erred in denying the Department's plea to the jurisdiction as to Callaway's claim for damages and injunctive relief resting on a breach-of-contract theory.

## CONCLUSION

We affirm the trial court's denial of the Department's plea to the jurisdiction as to Callaway's inverse condemnation claim and procedural due-process claim. We reverse the portion of the trial court's order denying the Department's plea as to Callaway's remaining claims, and we render judgment dismissing those claims for lack of jurisdiction.