STATE of Texas, TEXAS DEPARTMENT OF TRANSPORTATION, Appellant

v.

ALLODIAL LIMITED PARTNERSHIP, Appellee.

No. 05–07–01308–CV.

Court of Appeals of Texas, Dallas.

March 31, 2009.

Lisa Marie Nieman and Susan Desmarais Bonnen, Assistant Attorneys General-Transportation Div., for Appellant.

James A. Pikl, McKinney, TX, for Appellee.

Before Justices WRIGHT, BRIDGES, and MAZZANT.

## OPINION

Opinion by Justice BRIDGES.

The State of Texas, Texas Department of Transportation (TxDOT), appeals the trial court's order denying its plea to the jurisdiction. In a single issue, the State argues sovereign immunity bars Allodial Limited Partnership's claims of inverse condemnation, unconstitutional taking, breach of deed covenants, and declaratory judgment. We affirm in part the trial court's denial of the State's plea to the jurisdiction.

In April 1996, Charis Interests, Allodial's successor in interest, owned a fifteen acre tract of undeveloped land in Carrollton, Texas. On April 12, 1996, Charis sold 12.384 acres to the State for use in constructing the President George Bush Turnpike and retained a 2.843 acre tract

for future development. TxDOT and the Texas Turnpike Authority (TTA) jointly developed the turnpike, and it was decided the turnpike's main lanes should become a toll road. However, TxDOT retained full jurisdiction over the "service roads constructed with respect to SH190, exclusive of all exit and entrance ramps to the Bush Turnpike." In 1997, the North Texas Tollway Authority (NTTA) was created and succeeded the TTA. In late 1999 or early 2000, NTTA redesigned portions of the service road and constructed a retaining wall along a portion of the southern border of the 2.843 acre tract.

On August 23, 2002, Charis conveyed the 2.843 acre tract to Allodial and assigned to Allodial all of Charis' interests in the property, including all claims relating to the property. On March 8, 2004, Allodial's manager, Thomas Staley, sent Maurice Pittman at TxDOT a letter referring to the location of a "requested curb cut." Attached to the letter was a sketch of the 2.843 acre tract showing a 3000–square–foot "C–Store/Rest." with a drive through and surrounding parking. The sketch showed an entrance onto McCoy Road and a large arrow pointing to the discussed "curb cut" and entrance onto the turnpike service road. On March 22, 2004, TxDOT sent Staley a letter with an attached copy of Staley's sketch showing a proposed service road entrance 250 feet from the corner of McCoy and the service road. The revised sketch showed a thirty-foot entrance and the notations "Driveway Allowed" and "Remove 50′ of Retaining Wall." The attached letter stated this spacing did not meet the minimum spacing requirement of 360 feet from the corner, but further stated "occasionally TxDOT can deviate from policy." The letter stated "final approval is contingent upon satisfactory review of the drainage, grading, and construction plans for this site." If Allodial wanted to continue with the project, the letter advised Allodial to submit a complete set of construction plans and a permit to construct access driveway facilities to TxDOT.

On September 17, 2004, Allodial sued TxDOT alleging breach of deed covenants, taking without just compensation, inverse condemnation, and violations of the Texas Constitution. Allodial also sought a declaratory judgment that the deed covenants in the deed conveying the twelve acre tract were enforceable and required that the owner of the twelve acre tract take no steps to cause the remaining tract to be deprived of on-grade access to the twelve acre tract, including the existing service road. In April 2005, at the request of the parties, the case was abated, and it was reinstated in August 2006. On December 5, 2006, TxDOT filed its plea to the jurisdiction asserting Allodial lacked standing to bring its claims, there was no affirmative act by TxDOT giving rise to Allodial's claims, and sovereign immunity barred Allodial's defective takings claims. On September 6, 2007, the trial court denied TxDOT's plea to the jurisdiction on the basis that, "in addition to other issues preventing the Plea from being granted," there were "fact issues inextricably intertwined with both the issue of jurisdiction and the merits of the case." This appeal followed.

In a single issue, TxDOT challenges Allodial's claims for inverse condemnation and unconstitutional taking, breach of deed covenants, and declaratory judgment. TxDOT asserts Allodial is unable to establish a material and substantial impairment of access to its property and argues that, under these circumstances, the State retains its sovereign immunity.

██ In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to suit.

*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004) (citing *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999)). Sovereign immunity includes two distinct principles: immunity from suit and immunity from liability. *Miranda,* 133 S.W.3d at 224. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject-matter jurisdiction. *Id.* Sovereign immunity is properly asserted in a plea to the jurisdiction. *Id.* at 225–26.

■ Sovereign immunity does not shield the State from an action for compensation under the takings clause. *Gen. Servs. v. Little–Tex Insulation,* 39 S.W.3d 591, 598 (Tex.2001). The takings clause prohibits the State from taking a person's property under its sovereign powers without adequate compensation unless by such person's consent. TEX. CONST. art. I, § 17; *Little–Tex,* 39 S.W.3d at 598. To establish a takings claim, one must prove (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Little–Tex,* 39 S.W.3d at 598.

■ Whether a court has subject-matter jurisdiction is a question of law. *Miranda,* 133 S.W.3d at 226. A plea to the jurisdiction can be based on the pleadings or on evidence. *Id.* When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228.

■ A change in a property's use due to condemnation is relevant to the fair market value of the property, but that does not mean all diminished value is compensable. *State v. Dawmar Partns., Ltd.,* 267 S.W.3d 875, 878 (Tex.2008) (citing *County of Bexar v. Santikos,* 144 S.W.3d 455, 459 (Tex.2004) ("Damages to remainder property are generally calculated by the difference between the market value of the remainder property immediately before and after the condemnation, considering the nature of any improvements and the use of the land taken.")). Diminished value is compensable only when it derives from a constitutionally cognizable injury. *Dawmar,* 267 S.W.3d at 878 (noting injury landowners in *Dawmar* identified was loss of value resulting exclusively from denial of direct access to FM 1695 and its frontage roads).

■ Diminished value resulting from impaired access is compensable only when access is materially and substantially impaired. *Id.* Whether access has been materially and substantially impaired is a threshold question of law reviewed de novo. *Id.* (citing *City of San Antonio v. TPLP Office Park Props.,* 218 S.W.3d 60, 66 (Tex.2007)). In determining whether diminished value due to impaired access is compensable, we first look to whether other access points remain after the taking and whether those access points are reasonable. *Dawmar,* 267 S.W.3d at 878 (citing *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965) (holding access not materially and substantially impaired when one access point was closed but another access point on a public street remained unaffected)).

■ The Texas Supreme Court has typically analyzed remaining access in light of the actual or intended uses of remainder property as reflected by existing uses and improvements and applicable zoning. *Dawmar,* 267 S.W.3d at 879. The supreme court has rejected impairment of access claims based on speculative or

hypothetical uses of remainder property. *Id.* In *State v. Delany,* 197 S.W.3d 297 (Tex.2006), the court held that "while condemned property may be appraised at its highest and best use, remaining property on which there are no improvements and to which reasonable access remains is not damaged simply because hypothetical development plans may have to be modified." *Id.* at 300. Restrictions on access that result only in increased circuity of travel are not compensable. *Dawmar,* 267 S.W.3d at 880. Moreover, access is not materially and substantially impaired merely because other access points are significantly less convenient. *Id.* In *Dawmar,* the court reaffirmed that its determinations in *Santikos* and *Delany* "neither held nor implied that lack of access to an arterial road established impairment of access as a matter of law." *Dawmar,* 267 S.W.3d at 880.

■ Here, the parties presented evidence at the hearing on TxDOT's plea to the jurisdiction. Accordingly, we consider the relevant evidence submitted by the parties. *See Miranda,* 133 S.W.3d at 226–27. We review the trial court's ruling on a plea to the jurisdiction de novo. *See id.* at 226. The record shows TxDOT worked in conjunction with TTA and its successor, NTTA, to develop the turnpike. TxDOT specifically retained full jurisdiction over the "service roads constructed with respect to" the turnpike. Allodial's 2.843 acre tract fronts the turnpike's service road, and Allodial complains that TxDOT has materially and substantially impaired its access to the service road. Under these circumstances, we conclude TxDOT's argument that it did not act "intentionally" lacks merit.

However, the record refutes Allodial's claim that TxDOT's intentional actions materially and substantially impaired its access to the 2.843 acre tract. The record shows the tract has unimpaired access to McCoy Road along one of its boundaries and shows Allodial plans to place an entrance there if the raw land is developed. Further, the record shows that Allodial may proceed to obtain access along the turnpike's service road if it satisfies certain conditions for such development. However, even if Allodial is not permitted access along the service road, we conclude the circuity of travel necessitated by access only to McCoy Road is not compensable. *See Dawmar,* 267 S.W.3d at 879–80. Under these circumstances, the trial court erred in denying TxDOT's plea to the jurisdiction as to Allodial's claims concerning impaired access to its property.

■ As to Allodial's claim that TxDOT has "taken" its property by physically encroaching on its property, the record contains a survey supporting this claim. The survey shows two concrete drain inlets physically occupy Allodial's property, and nothing in the record shows TxDOT has paid for this occupied property or that Allodial has consented to the occupation. Accordingly, the record supports Allodial's claim that such encroachment constitutes a taking, and the trial court properly denied TxDOT's plea to the jurisdiction on this basis. *See Little–Tex,* 39 S.W.3d at 598.

■ As to Allodial's declaratory judgment claims, the record shows Allodial sought declaratory judgment that the deed covenants required TxDOT to take no steps to deprive the 2.843 acre tract of on-grade access to the service road and that TxDOT's actions constituted a taking under article I, section 17 of the Texas Constitution. Declaratory judgment suits against State officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. *Tex. Natural Resource Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). That is because such suits attempt to control State action by imposing liability on the State. *Id.* at 856. Con-

sequently, such suits cannot be maintained without legislative permission. *Id.* And, private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory judgment claim. *Id.; see Tex. Parks & Wildlife Dep't v. Callaway,* 971 S.W.2d 145, 151–52 (Tex.App.-Austin 1998, no pet.) (trial court erred in denying plea to jurisdiction on request for declaratory judgment seeking declaration of party's rights under easement and order enforcing those rights).

Allodial's claims for breach of deed covenants, like the claims under the easement in *Callaway,* are analogous to breach of contract claims and constitute a suit against the State that cannot be maintained without legislative permission. *Callaway,* 971 S.W.2d at 152. The trial court therefore erred in denying TxDOT's plea to the jurisdiction as to Allodial's request for a declaratory judgment on its claims related to breach of deed covenants. *See id.* For the same reasons, it was error to deny TxDOT's plea to the jurisdiction on Allodial's breach of deed covenant claims brought outside the declaratory judgment context. *See id.*

To the extent Allodial seeks declaratory judgment on its taking claims in addition to its taking claims outside the declaratory judgment context, the taking claims amount to a claim for money damages. *See* Tex. Const. art. I, § 17 (party entitled to "adequate compensation" for property taken, damaged or destroyed for or applied to public use). *See IT–Davy,* 74 S.W.3d at 860 (private parties not allowed to sue State for money damages under Declaratory Judgment Act). Accordingly, while we have concluded sovereign immunity does not completely shield TxDOT from Allodial's taking claims in this case, these claims are not properly characterized as declaratory judgment claims. *See IT–Davy,* 74 S.W.3d at 856; *Callaway,* 971 S.W.2d at 151–52. The trial court erred in denying TxDOT's plea to the jurisdiction on these claims. We overrule TxDOT's issue as to Allodial's takings claim but sustain TxDOT's issue as to all other claims asserted by Allodial.

We sustain the trial court's denial of TxDOT's plea to the jurisdiction on Allodial's takings claims and remand for further proceedings. We dismiss Allodial's remaining claims for want of jurisdiction.