

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00039-CV

**CITY OF MIDLOTHIAN, TEXAS,**

                                                                            **Appellant**

 **v.**


**ECOM REAL ESTATE MANAGEMENT, INC.,**

                                                                            **Appellee**


---


**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 68846**

---

## MEMORANDUM  OPINION

---

The City of Midlothian, in the course of expanding its wastewater operations, approached ECOM Real Estate Management, Inc. about obtaining an easement on ECOM's property.  The parties entered an easement agreement for construction of a sewer system.  The City agreed to construct five stubout connections, which allow ECOM to access the sewer system, and agreed that ECOM could provide its own water. After the City installed the sewer system and stubouts, the city council passed an ordinance requiring parties to purchase water from the City in order to use the sewer

systems.  The City denied ECOM's application for an exemption.  ECOM sued the City, alleging breach of contract, fraud, and fraudulent inducement and seeking a declaratory judgment, attorney's fees, and exemplary damages.[1]  The trial court denied the City's partial plea to the jurisdiction.  In five issues, the City challenges the denial of its plea.  We reverse and render.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's "power to determine the subject matter of the suit."  *Vela v. Waco Indep. Sch. Dist.*, 69 S.W.3d 695, 698 (Tex. App.—Waco 2002, pet. withdrawn).  We review a plea "based on sovereign immunity de novo because the question of whether a court has subject matter jurisdiction is a matter of law."  *Hoff v. Nueces County*, 153 S.W.3d 45, 48 (Tex. 2004); *see Vela*, 69 S.W.3d at 698.  Where "the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant."  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).  "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor."  *Id*.

## BREACH OF CONTRACT

In issue one, the City argues that the trial court lacks subject matter jurisdiction over ECOM's breach of contract claim.

---

[1]     ECOM also alleged a takings claim under article I, sections 17 and 19 of the Texas Constitution. *See* TEX. CONST. art. I, §§ 17, 19.  These claims were not part of the City's partial plea to the jurisdiction and are not before us.

ECOM does not contend that the Legislature has waived immunity from suit for the breach of contract action alleged in this case. *See* TEX. LOCAL GOV. CODE ANN. §§ 271.151-.152 (Vernon 2005); *see also City of San Antonio v. Reed S. Lehman Grain, Ltd.*, No. 04-04-00930-CV, 2007 Tex. App. LEXIS 7515, at *6-7 n.2 (Tex. App.—San Antonio Mar. 14, 2007, pet. denied) (mem. op.). Rather, ECOM argues that it may pursue its breach of contract claim under *Texas A&M University-Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002), (plurality op.) and *City of Carrollton v. Singer*, 232 S.W.3d 790 (Tex. App.—Fort Worth 2007, pet. denied).

In *Lawson*, the trial court granted the University's plea to the jurisdiction as to all but Lawson's whistleblower and constitutional claims, which the parties settled. *See Lawson*, 87 S.W.3d at 518-19. Lawson later sued the University for breach of the settlement agreement. *Id*. at 519. The trial court denied the University's plea to the jurisdiction. *Id*. Noting that the Legislature has waived immunity for whistleblower claims, the Texas Supreme Court held:

> [W]hen a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued. The government cannot recover waived immunity by settling without defeating the purpose of the waiver in the first place. Such a rule would limit settlement agreements with the government to those fully performed before dismissal of the lawsuit because any executory provision could not thereafter be enforced.

*Id*. at 521.[2]

---

[2]    We note that *Lawson* is a plurality opinion. A plurality opinion has little precedential value, if any. *See Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 176 (Tex. 1994).

In *Singer*, the City notified the Singers that it needed to acquire a portion of their property to extend a road. *See Singer*, 232 S.W.3d at 792-93. The Singers agreed to convey a right of way to the City in exchange for the City's agreement to perform certain promises. *Id*. The Singers later sued the City for breach of the agreement. *Id*. at 794. The trial court denied the City's plea to the jurisdiction. *Id*. On appeal, the Singers argued that the "City is not immune from suit in this instance because the agreement between the parties was, in essence, a settlement of an eminent domain claim, for which the City has no immunity by virtue of the Texas Constitution." *Id*. at 795.

The Fort Worth Court agreed with the Singers. According to the Court, "An agreement to convey property to a governmental authority for a public purpose has the same effect as a formal condemnation proceeding." *Id*. at 798.

> [E]ven though the City had not yet instituted condemnation proceedings against the Singers in court, it intentionally acquired the Singers' land for the public purpose of extending a road, for which a municipality is statutorily authorized to institute condemnation proceedings…and it had performed a condition precedent to instituting eminent domain proceedings in court--negotiating with the Singers for adequate compensation.

*Id*. at 799. "[I]f the Singers had not reached a settlement agreement with the City, the City would have had to institute eminent domain proceedings against them to acquire the land." *Id*. The City "exposed itself to liability and suit by its *threat* of eminent domain proceedings." *Id*. at 800 (emphasis added).

> [T]he City could not *create* immunity from suit for the Singers' claim for adequate compensation by contracting to purchase their property at an agreed upon valuation in fulfillment of the condition precedent to filing an eminent domain proceeding in court as set forth in the property code.

*Id.* (internal citations omitted). The Fort Worth Court held that the City was not immune from suit because the agreement was a "settlement of an eminent domain proceeding in which the Singers would have a claim against the City for adequate compensation for the City's acquisition of their property, and for which the City would not be immune." *Id.*

Here, the City admits that it cannot prevail under *Singer*. However, relying on Chief Justice Cayce's dissent, the City argues that *Singer* was wrongly decided.

In his dissent, Chief Justice Cayce noted that the majority's holding conflicted with the rule that a governmental entity "does not, merely by entering into a contract, waive immunity from *suit*." *Id.* at 801 (Cayce, C.J., dissenting). He emphasized that, unlike *Lawson*, the "City was not exposed to suit because of a waiver of immunity when it entered into its agreement with the Singers." *Id.* At the time of the agreement, the Singers had "no cognizable claim under Texas law that could be brought against the City based on their negotiations with the City, and they had not filed or threatened to file a suit alleging a claim against the City for which the City's immunity is waived." *Id.*

He voiced several concerns with the majority's conclusion that the "City exposed itself to suit by 'its *threat* of eminent domain proceedings,' and that the parties' agreement settled an eminent domain claim in which 'the Singers *would have* a claim against the City for adequate compensation.'" *Id.* at 802. First, the "alleged 'threat' of eminent domain proceedings did not expose the City to a suit for adequate compensation because the Singers could not have sued the City based on such a threat." *Id.* The Singers would not have an "actionable claim against the City for adequate

compensation" unless the City "actually commenced eminent domain proceedings to take the property--which the City did not do." *Id.* Second, the agreement "evidences an intent that the Singers convey their property to the City in consideration for the City's promise[s]," not an intent to "settle an alleged eminent domain or adequate compensation claim." *Id.* Third, the Singers had "no adequate compensation claim to settle when they entered into the agreement because they had already reached an agreement with the City on the amount of compensation:"

> Before initiating an eminent domain proceeding, a municipality must first attempt to purchase the property by agreement. When the municipality purchases the property by agreement, there is no condemnation or "taking" of the property by the power of eminent domain. In such a case, the person from whom the property was purchased has no justiciable claim for adequate compensation under the condemnation statutes or the takings clause.

*Id.*

Finally, Chief Justice Cayce warned that "characterizing the agreement as settling an eminent domain claim" ignores the "distinction between a municipality's power to purchase property by contract and to take property by eminent domain." *Id.* at 803.

> The evidence conclusively shows that the City was acting within a color of right under contract when it negotiated the agreement with the Singers to purchase their property and *not* under its eminent domain powers. The Singers were not forced to negotiate with the City. They could have refused to negotiate, insisted that the City take the property, if at all, by eminent domain, and asserted a claim for adequate compensation. Having agreed to convey their property to the City voluntarily, however, the Singers should not be allowed to now assert that the City has taken or attempted to take their property against their will by eminent domain.

*Id.*

To support the holding in *Singer*, ECOM cites *San Antonio v. Grandjean*, 91 Tex. 430, 41 S.W. 477 (1897), *State v. Brewer*, 141 Tex. 1, 169 S.W.2d 468 (1943), *Howard v. County of Nolan*, 319 S.W.2d 947 (Tex. Civ. App.—Eastland 1959, no writ), and *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 2d 825 (S.D. Tex 1999). ECOM argues these cases clarify that a "conveyance in lieu of condemnation is the equivalent of a condemnation."

In *Grandjean*, the city council declared that the Grandjeans' property should be condemned and the City condemned the property, naming only Ulysses Grandjean in the petition. *See Grandjean*, 41 S.W. at 477, 480. Marie Grandjean accepted one half of the proceeds, but later sued to recover the property. *Id.* at 477-78. The Texas Supreme Court held that Marie could not recover the property. *Id.* at 480. The Court noted that eminent domain is "essentially a right to take, and does not involve the necessity of any grant or conveyance on part of the owner, or of any judicial decree." *Id.* at 478.

> [S]ince the State has the inherent and paramount right to the property, when needed for public purposes, the determination by the proper authority that the necessity for the taking exists, the taking, and the adjustment with the owner of the question of compensation, however affected, completes the appropriation and devotes the property to the public use. The conditional paramount title of the government becomes absolute when the compensation is assessed or agreed upon and paid, or when its payment is waived. The doctrine of eminent domain implies that it is to be exercised against the will of the owner. It is his want of consent that renders its exercise necessary, and hence it is not consistent with the theory of the doctrine, that any conveyance from the owner or decree of court is essential to pass the title. The dissent of the owner to the taking is unavailing. His right under our Constitution, except as against the State itself, is to demand that before the property be taken, his compensation shall be paid. When he accepts as compensation a sum of money, whatever the amount and in whatever manner arrived at, his property, to the extent of the taking, is expropriated and appropriated to the use of the

public. The question of compensation out of the way, he must yield to the inevitable. The State's right is to take or accept without a conveyance, and hence, when the compensation is adjusted, no conveyance is necessary.

*Id*. at 479; *Dorsett v. State*, 422 S.W.2d 828, 831 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e.).

In *Brewer*, the Brewers conveyed land to the State for construction of a highway and later sued for damage to their remaining property. *See Brewer*, 169 S.W.2d at 469, 471. The Texas Supreme Court explained that:

The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation. The conveyance will be held to be a release of all damages which would be presumed to be included in the award of damages if the property had been condemned.

*Id*. at 471 (quoting 2 JOHN LEWIS, A TREATISE ON THE LAW OF EMINENT DOMAIN IN THE UNITED STATES § 474 (3d ed. 1909)). The Brewers could not recover for damage to their property. *See id*. at 472-73.

In *Howard*, the Howards conveyed land to the State and Nolan County for "highway purposes" and later sued to set aside the deed. *Howard*, 319 S.W.2d at 948.

The power to acquire property for public use is inherent in the State without regard to consent of the owner, when adequate consideration is paid. However, when an owner consents to the taking and use of his property, such consent is a defense to an action to recover its possession. It is also held that whenever the owner accepts a sum of money as compensation for land for such a use, his property, to the extent of the taking, is expropriated to the use of the public.

*Id*. at 950 (internal citations omitted). The Howards could not set aside the deed, but were "limited to an action for damages for additional servitude on their land." *Id*.

In *Weingarten*, Albertson's leased a space from Weingarten. *See Weingarten*, 66 F. Supp. 2d at 834. The lease contained a provision regarding eminent domain. *Id*. at 835. TxDOT later sent correspondence entitled "Proposed Condemnation Proceedings." *Id*. Weingarten conveyed the property to TxDOT. *Id*. The deed provided that the consideration "represents a settlement and compromise by all parties as to the value of the property…in order to avoid formal eminent domain proceedings..." *Id*. at 843. Albertson's terminated the lease and later sued for breach of contract to recover a portion of the proceeds. *See id*. at 836-37. The Court noted that the "institution of formal condemnation proceedings was not required because Weingarten agreed to convey the property to TxDOT." *Id*. at 843.

> An agreement to convey property to a governmental authority has the same effect as a formal condemnation proceeding. "The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation proceedings." Indeed, "whenever the owner accepts a sum of money as compensation for land for such a use, his property, to the extent of the taking, is expropriated to the use of the public."

*Id*. at 843 (internal citations omitted). The Court rejected Weingarten's argument that no taking occurred. *See id*. at 843-45.

These cases recognize that both a voluntary conveyance of property by a landowner to a governmental entity and a taking by eminent domain have the same result. *See Grandjean*, 41 S.W. at 479; *see also Brewer*, 169 S.W.2d at 471; *Howard*, 319 S.W.2d at 950; *Weingarten*, 66 F. Supp. 2d at 843. As Chief Justice Cayce notes, there exists a distinction between a governmental entity's right to purchase property versus its right to take property. *See Osborne v. Keith*, 142 Tex. 262, 177 S.W.2d 198, 201 (1944);

*see also Weingarten*, 66 F. Supp. 2d at 842 ("Generally, in Texas, 'the government compensates the owner before appropriating property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding.'"); TEX. PROP. CODE ANN. § 21.012 (Vernon Supp. 2008); TEX. LOCAL GOV. CODE ANN. § 273.001 (Vernon 2005). Under either method, the entity has the same rights to the property. *See Grandjean*, 41 S.W. at 479; *see also Brewer*, 169 S.W.2d at 471; *Weingarten*, 66 F. Supp. 2d at 843. Despite having the same *result*, the difference between the two methods of acquisition is that eminent domain is "exercised against the will of the owner," while a purchase involves the owner's voluntary consent. *Grandjean*, 41 S.W. at 479. If the owner consents to a purchase, the process of eminent domain is unnecessary. *See id*. We agree with Chief Justice Cayce's conclusion that *Singer* ignores this important distinction.

Additionally, *Singer* ignores the fact that *Lawson* involved a pending lawsuit. The San Antonio Court recently declined to apply *Lawson* absent pending litigation:

> Unlike *Lawson*, Gracia did not have a statutorily recognized claim pending in the trial court when he entered into an agreement with the District. The settlement agreement in this case was executed just as Gracia was instituting the administrative process that the State created for challenging the termination of teaching contracts. In short, Gracia settled a claim that, at that point in time, had no adjudicative value in our court system.

*Donna Indep. Sch. Dist. v. Gracia*, 286 S.W.3d 392, 395 (Tex. App.—Corpus Christi 2008, no pet.).[3]  In *Porretto v. Patterson*, 251 S.W.3d 701 (Tex. App.—Houston [1st Dist.] 2007, no pet.), the First Court cited *Lawson* as follows:

> [A] governmental entity that agrees to *settle a lawsuit* from which it is not immune cannot claim immunity from suit for breach of the settlement agreement relating to that claim.  The policy supporting this holding is that the government should not regain immunity it previously has waived by *settling a case*.

*Porretto*, 251 S.W.3d at 712 ("Because the GLO is not immune from the Porrettos' takings claim, under *Lawson*, the Porrettos' breach of contract claim can proceed, but only to the extent it arises out of the takings claim.") (emphasis added) (internal citations omitted).  We agree with this interpretation of *Lawson*.

In doing so, we note that this case does not involve a situation where the City was exposed to suit.  *See Singer*, 232 S.W.3d at 802-03 (Cayce, C.J., dissenting).  When the parties entered the easement agreement, no eminent domain proceeding was pending because no petition had been filed in the proper court.  *See* TEX. PROP. CODE ANN. § 21.012(a).  ECOM, however, argues that the City threatened to file eminent domain proceedings and would have commenced proceedings had an agreement not been reached; thus, the agreement was made under a threat of eminent domain.[4]  This

---

[3]     ECOM distinguishes *Gracia* on grounds that Gracia had an administrative remedy.  *See Donna Indep. Sch. Dist. v. Gracia*, 286 S.W.3d 392, 395 (Tex. App.—Corpus Christi 2008, no pet.) ("The Texas Supreme Court…has forestalled the waiver-by-conduct exception to sovereign immunity in situations where an administrative remedy is available.").  Despite this factual distinction, the San Antonio Court's reasoning that *Lawson* is inapplicable absent a pending lawsuit is still relevant to our analysis.

[4]     Although the record lacks evidence suggesting that the City actually did threaten to commence eminent domain proceedings, ECOM's first amended original petition states: "representatives of Midlothian indicated to ECOM the city's need for a sewer line across a portion of the Master Tract and that it would acquire the land by eminent domain if an agreement between Midlothian and ECOM could

argument is inconsistent with our interpretation of *Lawson*. *See Porretto*, 251 S.W.3d at 712. ECOM could not assert a claim for adequate compensation until the City filed a petition to take the property by eminent domain. *See Singer*, 232 S.W.3d at 802 (Cayce, C.J., dissenting). Thus, ECOM had no claim to settle at the time the agreement was reached. *Id.* More importantly, the easement agreement itself contains no language suggesting an intent to settle an eminent domain claim. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) ("In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."); *see also Weingarten*, 66 F. Supp. 2d at 843 (Deed contained language evidencing an intent to settle and avoid eminent domain proceedings).

ECOM suggests that to hold that the easement agreement did not settle an eminent domain claim renders the negotiation process a "mere charade to create immunity." To say that the easement agreement settled an eminent domain claim, when it contains no language to this effect[5] and no eminent domain proceeding was pending, further blurs the distinction between an entity's power to purchase and its power to take. *See Singer*, 232 S.W.3d at 803 (Cayce, C.J., dissenting); *see also Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246, 248 (Tex. 2002) ("[A] governmental entity does not waive immunity from suit simply by contracting with a private party.").

not be reached." We must take ECOM's pleadings as true. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

[5] ECOM maintains that its pleadings establish that the easement agreement is actually a settlement of an eminent domain claim. While we must take ECOM's pleadings as true, "we are not bound by legal conclusions nor by any illogical factual conclusions drawn from the facts pled." *Aledo Indep. Sch. Dist. v. Choctaw Props.*, 17 S.W.3d 260, 262 (Tex. App.—Waco 2000, no pet.), *overruled on other grounds by Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006).

Accordingly, we conclude that the City was "acting within a color of right under contract when it negotiated the agreement with [ECOM] to purchase [] property and *not* under its eminent domain powers." *Singer*, 232 S.W.3d at 803 (Cayce, C.J., dissenting). Because the trial court erred by denying the City's plea to the jurisdiction as to ECOM's breach of contract claim, we sustain issue one.

## DECLARATORY JUDGMENT

The City argues, in issue two, that the trial court has no subject matter jurisdiction over ECOM's declaratory judgment claim because it is an improper attempt to enforce performance of the easement agreement and is so intertwined with ECOM's breach of contract claim as to be an attempt to recast its breach of contract claim as a declaratory judgment claim.

A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008). "[D]eclaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" for which immunity is not waived. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-56 (Tex. 2002). "[P]rivate parties cannot circumvent the State's

sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim." *Id.* at 856.

ECOM's breach of contract claim is phrased, in pertinent part, as follows:

Through the Ordinance, Midlothian breached the settlement agreement/contract. Midlothian's refusal to allow ECOM and the future residents of the Master Tract access to Midlothian's sewer system without the purchase of water from Midlothian is a breach of the settlement/agreement contract, which has proximately caused damages to ECOM…

ECOM's declaratory judgment claim states, in pertinent part:

As the dispute arises from the interpretation of a written instrument, ECOM requests the Court enter a declaratory judgment as to the meaning of the easement. Specifically, ECOM asks the Court to adjudicate the intent of the parties as reflected in the easement was to allow future residents of the Master Tract access to Midlothian's sewer system without necessity of purchasing water from Midlothian.

ECOM requested a similar finding if the trial court determined that the agreement was ambiguous and, alternatively, requested rescission in the event there was no meeting of the minds between the parties.

ECOM maintains that it simply seeks a declaration as to "whether the easement agreement in conjunction with the ordinance requires that ECOM purchase water from the City if it likewise wants to connect to the sewer system." We disagree.

In *Texas Parks & Wildlife Department v. Callaway*, 971 S.W.2d 145 (Tex. App.— Austin 1998, no pet.), Callaway owned property on which the Texas Parks and Wildlife Department had an easement for a waterway. *See Callaway*, 971 S.W.2d at 147. Callaway sued the Department, alleging that the Department's opening of the waterway to the public resulted in a taking without compensation. *Id.* at 148. Callaway

sought a declaration that the "Department has authority to keep the [waterway] closed to the public" and "must use this authority in complying with the easement's conditions and restrict public boating in the [waterway]." *Id*. at 151. The trial court denied the Department's plea to the jurisdiction. *See id*. at 147. The Austin Court held:

> Although Callaway's request for declaratory judgment is not premised expressly on breach of contract, it is analogous to such a claim. In essence, Callaway seeks a declaration of his rights under the easement and an order enforcing those rights. There is no basis for the injunctive relief or the contractual damages that Callaway seeks unless he can establish that the easement constituted a contract, binding on the Department, which he can enforce. Whether the Department's decision that it was legally required to open the Pass was correct or incorrect, a suit to test it by seeking enforcement of contract rights is necessarily a suit against the state that cannot be maintained without legislative permission.

*Id*. at 152.

In *Lehman Grain*, Reed dedicated a sewer line easement to the City of San Antonio in exchange for the City's agreement that Reed could connect to the sewer line as long as "Reed 'ma[de] a proper application' and 'enter[ed] into an agreement with the City for such sewer service.'" *Lehman Grain*, 2007 Tex. App. LEXIS 7515, at *1-2. Reed later sued the City when it denied sewer service. *See id*. at *2. Reed sought a declaration that "the City is obligated to comply with the terms of the Dedication Agreement by granting Lehman the privilege of connecting to the sewer line." *Id*. at *10. The trial court denied the City's plea to the jurisdiction. *See id*. at *3-4. The San Antonio Court held that Reed's declaratory judgment claim sought to "enforce performance under the easement dedication contract." *Id*. at *10.

In *State v. Allodial Limited Partnership*, 280 S.W.3d 922 (Tex. App.—Dallas 2009, no pet.), Allodial's successor sold a twelve acre tract to the State, but retained a two acre tract, which it later sold to Allodial. *See Allodial*, 280 S.W.3d at 924-25. Allodial later sued TxDOT. *Id*. at 925. Allodial sought a declaration that the "deed covenants required TxDOT to take no steps to deprive the 2.843 acre tract of on-grade access to the service road and that TxDOT's actions constituted a taking under article I, section 17 of the Texas Constitution." *Id*. at 927. The trial court denied TxDOT's plea to the jurisdiction. *See id*. at 925. Citing *Calloway*, the Dallas Court held that Allodial's claim for breach of deed covenants was "analogous to breach of contract claims." *Id*. at 928.

In light of these authorities, ECOM's declaratory judgment claim is analogous to a breach of contract claim. ECOM not only seeks a declaration of its rights under the easement agreement, but further attempts, in essence, to enforce performance of the agreement. *See Callaway*, 971 S.W.2d at 152; *see also Allodial*, 280 S.W.3d at 928; *Lehman Grain*, 2007 Tex. App. LEXIS 7515, at *10. Accordingly, the trial court erred by denying the City's plea to the jurisdiction as to ECOM's declaratory judgment claim.[6] We sustain issue two.

## FRAUD/FRAUDULENT INDUCEMENT

In issue three, the City contends that the trial court lacks subject matter jurisdiction over ECOM's fraud and fraudulent inducement claims.

---

[6] ECOM cites cases in which a governmental entity was not immune from declaratory judgment actions on takings claims. *See Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 457-60 (Tex. App.—Austin 2008, pet. filed); *see also State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 365-66 (Tex. App.—Austin 2009, pet. filed). The City's partial plea to the jurisdiction does not challenge ECOM's takings claim; thus, the issue is not before us.

In the tort context, "[d]etermining a municipality's amenability to suit is a two-step inquiry:" (1) whether the function is governmental or proprietary; and (2) if governmental, whether immunity has been waived by statute. *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (quoting *Ethio Express Shuttle Serv., Inc. v. City of Houston,* 164 S.W.3d 751, 754 n.4 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

ECOM argues that if the City was not exercising its eminent domain powers at the time of the easement agreement, then it was acting in a proprietary capacity for which it has no immunity. However, the Legislature has identified sanitary and storm sewers and water and sewer service as governmental functions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(9), (32) (Vernon 2005). By entering a contract for the "purpose of installing, repairing, maintaining, removing, and operating a sanitary sewer line," the City performed a governmental function. *See id.*; *see also Lehman Grain*, 2007 Tex. App. LEXIS 7515, at *8 ("City was acting in a governmental capacity when it contracted with Reed to acquire the easement for the installation of the sewer line.").

Moreover, ECOM has not alleged (1) property damage, personal injury, or death proximately caused by the operation or use of a motor-driven vehicle or motor-driven equipment; (2) personal injury or death so caused by a condition or use of tangible personal or real property; or (3) a claim arising from a premises defect. Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005); Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (Vernon Supp. 2008). Additionally, the Tort Claims Act does not apply to claims "arising out of assault, battery, false imprisonment, *or any other intentional tort.*"

TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (Vernon 2005); *see Sanders v. City of Grapevine*, 218 S.W.3d 772, 779 (Tex. App.—Fort Worth 2007, pet. denied) (Trial court lacked jurisdiction over fraud claim because "fraud is an intentional tort.").

In summary, the trial court erred by denying the City's plea to the jurisdiction as to ECOM's fraud and fraudulent inducement claims. We sustain issue three.

**EXEMPLARY DAMAGES AND ATTORNEY'S FEES**

In its fourth and fifth issues, the City argues that the trial court lacks subject matter jurisdiction over ECOM's claims for exemplary damages and attorney's fees.

Because the trial court has no subject matter jurisdiction to consider ECOM's breach of contract, declaratory judgment, fraud, or fraudulent inducement claims, ECOM cannot recover attorney's fees or exemplary damages associated with these claims. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) ("[A] prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or a contract between the parties."); *see also Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995) ("[R]ecovery of punitive damages requires a finding of an independent tort with accompanying actual damages."). We sustain issues four and five.

We reverse the trial court's judgment and render judgment dismissing ECOM's breach of contract, declaratory judgment, fraud, and fraudulent inducement claims.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray dissenting)
Reversed and rendered
Opinion delivered and filed January 27, 2010
[CV06]